IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MILES ZACKERY-COLE NOVEMBER, et al,
Plaintiffs,

v. Civil Action No. 3:17-cv-113-JAG

CHESTERFIELD COUNTY, VIRGINIA, et al,
Defendants.

**OPINION**

On February 7, 2015, the plaintiff, Miles November, led Chesterfield County police officers on a car chase. As so often happens, the chase ended when November crashed his car and flipped it numerous times. Gasoline leaked on him from the wrecked car. A Chesterfield police officer, Ryan Swope, apparently perceived resistance from November when officers tried to restrain him. Swope tased[1] November. Soaked with gasoline, November went up in flames, suffering horrible injuries.

November has sued under 42 U.S.C. § 1983. He claims a) that the Chesterfield County Police Department ("CCPD") and Thierry Dupuis (in his official capacity as the Chief of the CCPD) put in place a policy or custom that permitted excessive use of force by police officers using Tasers, b) that Chesterfield County (the "County") and Dupuis failed to train officers on proper Taser use, and c) that Dupuis and James Lamb failed to supervise Officer Swope. November brings a state law negligence claim and a Fourth Amendment failure to supervise

[1] To the Court's surprise, the Merriam-Webster and the American Heritage dictionaries have recognized "tase" as a transitive verb, meaning to shoot or stun with an electrical stun gun. Meriam Webster, https://www.merriam-webster.com/dictionary/tase (last visited Oct. 26, 2017); The American Heritage Dictionary, https://www.ahdictionary.com/word/search.html?q=tase (last visited Oct. 26, 2017).

claim against a psychologist, Jon Moss, Ph.D., alleging that Moss inadequately screened Swope before declaring him fit for duty.

November's complaint fails to plausibly allege that Chesterfield's policies caused a constitutional violation. The complaint also fails to establish County liability on account of a sufficiently persistent or widespread history of Taser abuse. The failure to supervise claims against Dupuis and Lamb cannot succeed because the defendants lacked notice of the risk Swope posed and because the CCPD properly addressed Swope's prior misconduct. November fails to state a plausible claim against Moss because he did not owe November any duty under Virginia tort law and because the complaint fails to plausibly allege that Moss knew of an unreasonable and pervasive risk to the public. The Court dismisses those claims.

The complaint does, however, state a plausible claim regarding the failure to train CCPD officers, and the Court will deny the motion to dismiss the failure to train claim. Although Local Rule 56 restricts a party to a single motion for summary judgment in a case, the Court will grant the defendants leave to file an expedited motion for summary judgment on the failure to train issue, as well as a plenary motion later.

## I. BACKGROUND

On February 7, 2017, November crashed his car while fleeing the police. Officers on the scene smelled gasoline, and Officer Swope radioed for a fire crew and reported that "a lot" of fuel was leaking from the car. Four officers dragged November about 20 or more feet from the car where he remained un-handcuffed, compliant, and injured. When the fire truck arrived, it startled November, and he began to "thrash." Apparently Swope perceived this as dangerous

resistance, and approached the five men shouting "Taser, Taser, Taser." The officers cleared the area, and Swope fired the Taser. November, soaked with gasoline, became engulfed in flames.[2]

CCPD issues "Operational Policy/Procedure" manuals to its police officers. Procedure 2-29 governs Tasers specifically, and it refers to Procedure 2-3, which covers the use of force generally. Section 2-29 says that "the TASER should only be used against subjects who are exhibiting active aggression or who are actively resisting in a manner that, in the officer's judgment, is likely to result in injuries to themselves or others." (Dk. No. 19-1, p. 2.) It also says that "the TASER should not be used in the known presence of combustible vapors or liquids or other flammable surfaces." (*Id.*) Procedure 2-3 allows officers to use only that "force which a reasonably prudent officer would use under the same or similar circumstances." (Dk. No. 19-2, pp. 1–4.) Section 2-3 defines "deadly force" as "any use of force that is likely to cause death or serious bodily harm" and limits the use of deadly force to situations where "an officer reasonably believes that they are in imminent danger of death or serious injury, or when the officer reasonably believes that another person is in imminent danger of serious injury." (*Id.*)

The plaintiffs cite a great deal of numerical and historic data. They allege that CCPD officers deployed Tasers 136 times in the four years from 2012 through 2015. In five instances, an officer tased someone in handcuffs. Officers also tased fleeing suspects, mentally ill persons, and minors. Officers once used a Taser in a hospital near flammable gas tanks and once after a suspect used spray paint against the officers. Thirty alleged incidents involved tasing someone more than once.

For these incidents to have meaning, however, the Court must view the County's Taser history in the context of publicly available information, known or easily determined by anyone in

[2] For purposes of this motion, the Court will assume that Swope and the other officers at the accident site violated November's constitutional rights.

the Richmond area. Chesterfield is a suburban county bordering the City of Richmond. In 2015, the year of November's accident, the County had an estimated population of over 335,000.[3] The County has two major north-south highways, Interstate 95 and U.S. Route 1. At various points in the County, Interstate 95 has an average daily traffic volume of over 100,000 cars; Route 1 has between 15,000 and 20,000.[4] The County also has two heavily travelled east-west federal highways, Routes 60 and 360. And, of course, hundreds of other roads crisscross the County.

With this large population and heavy traffic, Chesterfield County's police officers have thousands of contacts with travelers and residents. Many of these contacts are unfriendly, resulting in arrests or the issuance of summonses. In 2015, the year of November's accident, Chesterfield's General District Court[5] had 12,498 criminal cases, and 50,938 traffic cases.[6] In other words, in the four years referred to by the plaintiffs, the 136 uses of Tasers occurred against a background of approximately 250,000 arrests and summonses.

Continuing his arithmetical argument, November alleges that Swope used his Taser four times more often than the Chesterfield average. While this may be true, in his entire career, Swope only used the Taser four times—three of them before he tased November. Chesterfield reviewed Swope's Taser usage and found that he never violated CCPD policies.

---

[3] Chesterfield County, http://www.chesterfield.gov/government.aspx?id=2111 (last visited Oct. 26, 2017).

[4] 2015 Virginia Department of Transportation Jurisdiction Report, Daily Traffic Volume Estimates, City of Colonial Heights, City of Richmond, and Chesterfield County, https://www.virginiadot.org/info/resources/Traffic_2015/AADT_PrimaryInterstate_2015.pdf (last visited Oct. 26, 2017).

[5] In Virginia's court system, General District Courts serve as the most common port of entry into the criminal prosecution system. These courts hear and decide misdemeanor and traffic cases, and hold preliminary hearings on felonies.

[6] Caseload Statistics of the General District Courts, available at http://www.courts.state.va.us/courtadmin/aoc/judpln/csi/stats/district/dbr1_2015.pdf (last visited Oct. 26, 2017). This website contains statistical information maintained by the Supreme Court of Virginia.

Chesterfield disciplined Swope for two prior infractions unrelated to Tasers—once for a verbal altercation with a Richmond City Police Officer and once for failure to leash his police dog, resulting in injuries to another officer. In response to these infractions, the County suspended him for five days without pay, placed him on probation for one year, and sent him to meet with Dr. Moss for a fitness-for-duty evaluation, which he passed.

Notwithstanding Moss's evaluation, all was not well with Swope during his tenure as a Chesterfield officer. After the incident in this case, Swope filed a worker's compensation claim saying that he suffered from Post-Traumatic Stress Disorder ("PTSD") which led him to snap at people and feel irritable and uneasy in crowds. The complaint does not allege that Swope told Dr. Moss of these issues in his fitness for duty examination. In September 2014, however, a medical clinician informed the CCPD that Swope had been participating in outpatient therapy for acute stress and PTSD.

## II. DISCUSSION

### *A. Chesterfield County*

A local government may be held liable for the actions of its police officers under 42 U.S.C. § 1983 only if the governmental body itself caused the deprivation of the plaintiff's rights. *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 692 (1978)). Under *Monell*, a plaintiff can prevail if (1) he suffered a deprivation of his federal rights, and (2) the execution of the government's "policy or custom" inflicted the injury. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003). A locality can develop a policy or custom in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so

> "persistent and widespread" as to constitute a "custom or usage with the force of law.

*Id.* (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

As stated above, the Court assumes that November plausibly alleges that he suffered a violation of his constitutional rights when Swope tased him. The plaintiffs run into trouble, however, showing that Chesterfield[7] caused the violation.

*i. Policies*

The Constitution prohibits the use of deadly force where a suspect poses "no immediate threat to the officer and no threat to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985). The CCPD's express policy on Taser use does not authorize constitutional violations and cannot be said to have caused its officers to inflict November's injuries.

The CCPD's use-of-force and Taser policies specifically advise against the use of Tasers in the known presence of gasoline and leave the ultimate decision of whether to use a Taser to the officer. The policies also limit the circumstances in which an officer may use deadly force. Here, although the policy does not specifically define the use of a Taser within the known or suspected presence of combustible vapors as deadly force, the policy does admonish against the use of Tasers in the known presence of gasoline and restricts the use of deadly force to situations where officers face an imminent danger of death or serious injury. November does not plausibly allege that this policy itself violates the Constitution or leads to constitutional violations by County officers.

---

[7] The plaintiff has sued Dupuis under § 1983 in his official capacity as Chesterfield's police chief. A suit against a government employee in his official capacity is actually a suit against the locality for which he serves. Since November has already sued Chesterfield, the Court will dismiss Dupuis in his official capacity.

*ii. Custom*

A governmental custom "may arise if a practice is so persistent and widespread and so permanent and well settled as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d at 473 (quoting *Carter*, 164 F.3d at 218). The widespread practice must involve the violation of constitutional rights. "Municipal fault for allowing such a developed 'custom or usage' to continue requires (1) actual or constructive knowledge of its existence by responsible policymakers, and (2) their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices." *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987) (citation omitted). To establish constructive knowledge, a plaintiff can show any combination of: the widespread extent of the practices, general knowledge of their existence, or an official action of responsible policymakers. *Id.* The alleged failure to stop the known but uncorrected conduct must make the specific violation alleged "almost bound to happen" rather than merely "likely to happen in the long run." *Id.* at 1390–91.

November fails to show a custom of unconstitutional Taser use either with respect to using Tasers around combustibles or in circumstances where the suspect has been adequately restrained. First, November points to only two instances of prior Taser use in the presence of potentially combustible vapors, which does not adequately show a "widespread" custom. *See Bland v. Fairfax Cty., Va.*, No. 1:10CV1030 JCC/JFA, 2011 WL 1660630, at *19 (E.D. Va. May 3, 2011) (finding as a matter of law that two non-disciplined instances of sexual assault over a 20 year period could not establish a custom with the force of law). Next, November cites only a few instances in which Chesterfield police officers tased previously-restrained suspects.[8] The

[8] The bulk of tasing incidents referred to in the complaint—thirty in all—relate to tasing a person more than once. This conduct does not related to tasing a person around flammable substances

examples in the complaint represent a small handful of the CCPD's 136 Taser deployments between 2012 and 2015, do not plausibly allege a widespread custom by its officers that made November's tasing "bound to happen," and do not suggest that Chesterfield acted with deliberate indifference toward police officers tasing people already in custody.

Even considering all 136 instances of Taser use over four years, this small number of incidents compared with the enormous universe of contacts between the police and the public can hardly put the County on notice that its officers abuse the public with Tasers. This claim simply fails.

*iii. Failure to Train*

To impose liability on a municipality for a failure to train, a plaintiff must prove: "(1) the subordinates actually violated the plaintiff's constitutional or statutory rights, (2) the supervisor failed to properly train the subordinates thus illustrating a 'deliberate indifference' to the rights of the persons with whom the subordinates come into contact; and (3) this failure to train actually caused the subordinates to violate the plaintiff's rights." *Brown v. Mitchell*, 308 F. Supp. 2d 682, 701 (E.D. Va. 2004) (citing *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989)). A plaintiff can show a supervisor's deliberate indifference by failing to train subordinates (1) in response to regular violations of constitutional rights or (2) "concerning an obvious constitutional duty that the particular employees are certain to face." *Brown*, 308 F. Supp. 2d at 704 (citing *Harris*, 489 U.S. at 390).

As stated above, the Court assumes that Swope violated November's constitutional rights. November then alleges that Chesterfield failed to train officers on the use of Tasers in the presence of combustibles. In support of its motion to dismiss, the defendants have presented

---

or once the person has been restrained, and the failure to curb multiple tasings of a suspect did not make the incident with November bound to happen.

training materials to the Court, but the Court will not consider those materials at this stage.[9] Under *Harris*, a municipality has a duty to train officers regarding constitutional duties that officers are certain to face. (*Id.*) November has adequately alleged that Chesterfield failed to adequately train officers on Taser use.

Even if the Court were to consider the training slides produced by the County, they amount to little more than a bare-bone outline of the curriculum. Before the County can carry the day on this theory of liability, it must explain its Taser training in more detail. The Court will, however, allow Chesterfield to file an expedited motion for summary judgment as to this issue.

### *B. Failure to Supervise Claim Against Dupuis and Lamb*

To establish supervisory liability under § 1983, a plaintiff must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

November fails to plausibly allege that Dupuis or Lamb had constructive knowledge that Swope posed a pervasive and unreasonable risk to the public, and, in any event, they did not act with deliberate indifference to any threat Swope may have posed to citizens like November.

---

[9] Unlike Chesterfield's use of force policies, which the complaint cites and which lie at the heart of November's unconstitutional policy claim, the training materials consist of over 200 power point slides and require explanation about the context in which Chesterfield uses them. The slides are not "integral" to the complaint and are better suited for use at summary judgment. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.") (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)).

Prior to tasing November, Swope had two previous behavioral issues: one involved a verbal altercation with another officer, and the other consisted of taking his police dog off of its leash which resulted in the injury to another officer. For these transgressions, he received five days of unpaid leave, a letter of reprimand, re-assignment out of the canine unit, and one year of probation. The County also sent Swope for an examination of his fitness for duty. In other words, management did not ignore or countenance Swope's misconduct.

Swope used his Taser three times before the incident with November. These limited incidents do not create the inference of knowledge that Swope posed a pervasive and unreasonable risk to the public.

Taking all inferences in November's favor, he has failed to plausibly allege that Dupuis or Lamb acted with deliberate indifference towards the public's safety based on November's past conduct.

### *C. Breach of Assumed Duties Claim Against Moss*

To succeed in a negligence case in Virginia, a plaintiff must plead a legal duty, a violation of that duty, and proximate causation resulting in damages. *Kellerman v. McDonough*, 278 Va. 487, 684 S.E.2d 786, 790 (2009). In this case, November cannot establish a duty.

Under Virginia law, a person generally does not have a duty to protect another from the conduct of third persons. An exception to this rule occurs when a special relationship exists: (1) between the defendant and a third person which imposes a duty on the defendant to control the third person, or (2) between the defendant and the plaintiff which gives a right of protection to the plaintiff. *Burns v. Gagnon*, 283 Va. 657, 668–69, 727 S.E.2d 634, 641–42 (2012). November does not claim that either exception applies.

Rather, November relies on the "assumed duty" doctrine. Essentially, this rule says that when a defendant has assumed a duty not otherwise created by law, the defendant can be liable for failure to perform the assumed duty. *Burns* is the leading case in this area. In *Burns*, the trial court dismissed a case before trial against the vice-principal in a school. A student had told the vice-principal about a fight planned in the school. The vice-principal promised to do something about it, but instead did nothing. Because he assumed the duty to protect the child, the Court held the vice-principal potentially liable for the injuries suffered in the eventual fight, and remanded the case for trial. *Burns*, 283 Va. at 672–73, 727 S.E.2d at 643–44. Applying *Burns* here, November says that when Moss performed Swope's fitness for duty examination, he assumed a duty to protect the class of people with whom Swope would come into contact.

But November's argument fails because he seeks to impose a duty on Moss to protect virtually the entire population of the planet. As a Chesterfield County police officer, Swope could deal with any of hundreds of thousands of different people each day. In *Burns*, the school official owed an assumed duty to the students preparing to square off in a fight. Here, November asks the Court to recognize a duty to everyone who might come within the geographical confines of Chesterfield County and who, therefore, might meet Swope. No Virginia case imposes a duty to such an enormous and amorphous class.

Rather, November's case falls under the public duty doctrine. "A public official cannot be held civilly liable for violating a duty owed to the public at large because it is not in society's best interest to subject public officials to potential liability for every action undertaken. Therefore, only a violation of a special duty owed to a specific, identifiable person or class of persons will give rise to civil liability of a public official." *Burdette v. Marks*, 244 Va. 309, 312, 421 S.E.2d 419, 421 (1992) (internal citation omitted). The reasoning of *Marshall v. Winston*,

239 Va. 315, 389 S.E.2d 902 (1990), applies here. In *Marshall*, a sheriff released an inmate prematurely; the inmate then killed an innocent citizen. The plaintiff tried to hold the sheriff liable for the death. The court, however, held that the law imposed on the sheriff a public duty, but not a duty to the victim, a member of the general public. *Winston*, 239 Va. at 319, 389 S.E.2d at 905 ("To hold a public official civilly liable for violating a duty owed to the public at large would subject the official to potential liability for every action he undertook and would not be in society's best interest.") *Marshall* dictates dismissal of this claim against Moss.

That Moss merely contracted with the County, rather than serving as an employee, makes no difference. As the plaintiffs concede, Moss performed a County function, delegated to him. In fact, November argues that Moss acted under color of state law, just like a County employee. Moss's status as a contractor does not change the nature of his duty in this case—a public duty to the citizenry at large.

### *D. Breach of Constitutional Duties Claim Against Moss*

November says that Moss violated a "constitutional duty" to him by failing to conduct the fitness for duty examination in a way that controlled Swope's risk to the public. The plaintiffs do not say how this duty fits in any of the traditional categories of constitutional liability, but it is apparently a kind of supervisory liability. As with the supervisory liability claims against Dupuis and Lamb, the claim against Moss fails because the complaint does not plausibly allege that Moss acted with deliberate indifference.

To state a claim for relief under § 1983, a plaintiff must allege that the defendant acted under the color of state law and deprived the plaintiff of a right secured by the Constitution. *Brown v. Transurban USA Inc.*, 144 F. Supp. 3d 809, 833–34 (E.D. Va. 2015) (citation omitted). A private actor can act under color of state law "when the state has delegated a traditionally and

exclusively public function to a private actor." *Andrews v. Fed. Home Loan Bank of Atlanta*, 998 F.2d 214, 217 (4th Cir. 1993). As stated from the bench, the Court finds that Chesterfield delegated a part of its public function in operating and maintaining a police force to Moss. He therefore acted under color of state law in making his fitness-for-duty assessment and recommendation.

As discussed above, to establish supervisory liability under § 1983, a plaintiff must allege that the supervisor had actual or constructive knowledge that a subordinate posed a "pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff and "that the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices.'" *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted). A court determines supervisory liability "by pinpointing the persons in the decisionmaking chain whose deliberate indifference permitted the constitutional abuses to continue unchecked." *Id.* at 798 (citing *Slakan v. Porter*, 737 F.2d 368, 376 (4th Cir. 1984)). Even if Moss could be said to have been Swope's supervisor, the complaint does not plausibly allege that Moss had reason to believe that Swope posed a pervasive and unreasonable risk to society based solely on his prior misconduct, his Taser use, or his PTSD symptoms. As stated above, Swope's prior Taser use did not put his supervisors on notice that he posed an unreasonable threat to others. As to his other misconduct, it did not pose a substantial threat to the public, and, in any event, his superiors had taken disciplinary action to correct his behavior.

The complaint makes much of Swope's PTSD. November does not, however, allege that allowing someone with PTSD to serve as a police officer constitutes deliberate indifference in this context. This claim fails.

## III. CONCLUSION

For these reasons, the Court will grant in part and deny in part the motion to dismiss filed by Chesterfield, Dupuis, and Lamb. The Court will grant the motion to dismiss filed by Dr. Moss.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: October 31, 2017
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge